The United States Court of Appeals for the Federalist Circuit is now open and in session. God save the United States and this honorable court. Good morning, ladies and gentlemen. I can't see you nodding this morning, but I know you're there. We're operating under unusual circumstances, of course, but we're confident you'll be able to make your point. Our first case this morning is 2019-2308 J.S.T. Corporation v. ITC. Mr. Massey. Thank you. Good morning and may it please the court. Chief Administrative Law Judge Bullock ruled in favor of J.S.T. on both issues presented in this case. One, the elongated holds or first holds infringement issue. And two, validity, that is, whether the Tyco docking station anticipated the J.S.T. patent. Chief Bullock was right on both issues and the commission committed legal error in reversing him. On issue one, this is a classic case where preferred embodiments were improperly used to narrow the scope of the claim absent a clear disavowal or restriction of the claim. The figures are described in the specification as, quote, preferred embodiments and, quote, some embodiments of the present invention, unquote, not as the exclusive way to practice the invention. That's at Appendix 59, Column 3, Line 44. Using them to restrict the claim is a cardinal sin of claim construction, as this court said in the sign that license case. And over and over again, this court has repeated that principle. For example, in the retractable technologies case cited by Chief A.L.J. Bullock, this court said, to disavow claim scope, the specification must contain expressions of manifest exclusion or restriction. Yes. But getting to the nub of this case, particularly claim construction, the commission held, and isn't this the issue, that the first hold is more directly at the time of the claim than any second hold? And our assessment has found that the accuser does not think that the accuser includes second hold closer than any first hold. Isn't that basically what this case is about? That is, Your Honor. And I think the language of Claim 2 is what's dispositive because, as I was saying, the preferred embodiments can't be used to restrict the patent claims. The language in Claim 2 simply requires that elongated holds be located, quote, in N regions of the time plate proximate to two opposite Ns. So the claim doesn't say that the outermost holds must be elongated holds. It doesn't say that only elongated holds are in the N regions. It doesn't say that elongated holds are at the edges or nearest to the edges or at the outermost holds. I mean, it uses the term N regions, not edges. And so that's why we think the commission erred. It just ignored the language of the claim and narrowed it according to the construction of the embodiments. The specification uses the phrase at least to describe the location of the elongated holds. That's Appendix 58, Column 2, Lines 28 and 48, Appendix 60, Column 5, Lines 3 through 13. So when you use the phrase at least, you're showing that not all the elongated holds need to be in the N region and that second holds or the non-elongated holds can be located in the N regions as well. So what do you think is the correct construction? So there must be at least one elongated hold in each N region. And in order to qualify as a first hold, that elongated hold must have a contact length. What is the N region? So the N region is a geographic term. That's what the commission acknowledged, and it was correct at Appendix 1758 when it rejected an indefiniteness challenge. There are illustrations of Ns of the time plate. But how do we know what the N – under your construction, how does one know what the N region is? How is it defined? Well, it's defined – it is a geographic term, and I think there are several reasons it's quite definite. First, the legal construction, you know, we start with the Supreme Court standard in Nautilus. Obviously, that absolute precision is not attainable, and that the standard is reasonable certainty. And so this court has long held that terms of degree are not necessarily indefinite. In the Nautilus case on remand, for example, the court said that the term spaced relationship in a patent for a heart rate monitor passed the reasonable certainty test. And here you would do as Nautilus instructed. You look to the specification, the prosecution history, and what the understanding of those skills and the art would think about how to define the term of degree. And here, for example, the commission's opinion at Appendix 42 was able to label the N regions of the Tycho docking station. The interveners themselves identified the N regions of the Tycho docking station at Appendix 6412 and 6413. Dr. Flowers testified that a person of ordinary skill would be able to make the judgment about whether a hole is in the N region or the center region. That's Appendix 9138 to 39. As I mentioned, Figures 1, 5, and 6 in the patent show the ends of the time plate. That's Appendix 59, Column 3, Lines 22 to 39. And this court has frequently held, as I said, that geographic terms such as proximate and region need not contain an exact boundary in order to be definite. We cite in our briefs to the Mentor Graphics decision from 2017 that used the word near and said that was not indefinite. The Athletic Alternatives and Benetton Sports Systems cases decided the term region was not indefinite. Rosemont in 1984, close proximity is not indefinite. So all those geographic terms are sufficient to establish a reasonable certainty test. And I think one of the lessons of this court's indefinite in this case is that patent terms must be considered in the context of the intrinsic and extrinsic record rather than in abstract or in isolation. And here the idea that there must be a bright line boundary defining end region is belied by the fact that a person of ordinary skill would understand that the problem of thermal expansion is a matter of degree. I mean, although thermal expansion may be most pronounced at the edges, the intervener said it also occurs throughout the entire plate, even to a lesser degree in the center. Counsel, do you want to get to the contact legs issue? Pardon me, yes, your honor. I'll move to the contact legs issue. I want to see that in play. Yes, that's an excellent way of putting it. The commission erred in construing contact legs as including the grounding prongs of the Tyco docking station. Our view is that improperly read the term contact out of the claim. So it would have meant the same had it not just said legs and that the failure to give meaning to every term violates the elementary rules of claim construction. It wouldn't read it out if you read contact legs as having the purpose of non-electrical conducting legs such as posts in MART, right? Well, exactly. I mean, the MART is a perfect example. I mean, claim one was rejected as anticipated by MART, and so it was amended to replace the term legs with contact legs. You said that the claim wouldn't have any meaning if you read contact legs with grounding legs. And I'm suggesting to you that the term contact legs includes the kind of posts that you have in MART. That would give it meaning, right? Well, I misspoke if I said the claim wouldn't have any meaning. The word contact wouldn't be given any meaning under the other side's view because, as you say, the leg would mean the same thing as a post in MART. The post in MART was a non-contact leg. I'm sorry. I'm not understanding what you're saying. If you interpret contact legs as the commission did to mean an electrical connection, what is the kind of post of the word contact does that mean, right? Yes, Your Honor. I see what you're saying. If you interpret it as a grounding prong, so not a retention leg, not a conductive leg still, but not a contact leg, well, then I think we're with Chief ALJ Bullock. He said the problem with that interpretation of interpreting leg as basically conductive leg rather than contact leg is that a person of ordinary skill would recognize the distinction between a contact leg, which completes an individual circuit, and other kinds of conductive legs like grounding legs, which make a common ground, not an individual circuit. That's what he said in Appendix 3452, that the grounding prongs may be conductive, but they're all part of the same electrical circuit. They don't have their own individual circuit. They share a common ground in contrast with contact legs or contacts, which carry each individual signal individually. And so the specification, for example, refers to a contact leg making a contact with a counterpart connector. That's Appendix 59, Column 2, Line 16, Column 3, Lines 56 to 57. So that would also rule out a contact leg connecting to a common ground. The specification had in mind a one-to-one connection and an individual circuit. So we don't think a person of ordinary skill in the art could have understood contact legs in the way the Commission did. And there's also the insulative housing point. I mean, the claim preamble indicates that to be a contact leg, it must protrude from an insulative housing. And here, the Tyco docking station legs are grounding prongs that do not preclude from an insulative housing. Rather, they're part of a metallic shell that surrounds the housing, rather than being part of a contact protruding from the housing. That's Appendix 6881 and 6890. So for both of those reasons, the Commission's understanding of the grounding prongs was error. And I do think that the Martin prosecution history that we touched on is also very important here because the Post and Martin, although they were retention legs, they included a— —the invention and more clearly set forth the intended concept. Mr. Massey? Yes. Judge Scholl here. Before you run out of time, I just wanted to ask you one question about the—back a moment to the infringement. Isn't this quite significant? The only embodiment and figure in the statute show time-planes and other elongated holes. That is true, although the specification said at least, so it was implying that not all the elongated holes would need to be in the end region. But just to take your point, that, I think, is the lesson of the retractable technologies case, the CARA technology case that we cite in the brief. There are also several more, like continental circuits and Philips, Teleflex. In all those cases, the same point could have been made, that the only embodiments shown in the patent are a certain thing. And in each of those cases, the court refused to narrow the patent scope to the preferred embodiments. If there are no more questions, I'd like to save the remainder of my time. We will do that. Mr. Deavis? Chair Dine, that's fine. Chair Dine, sorry. And you're putting your time—you're taking how many minutes? Eight minutes. Mr. Davis follows you.  Please proceed. Thank you. Good morning. May it please the Court. Here we have a case where, on one hand, JST is arguing for a very broad construction with respect to infringement, accusing the Commission of importing limitations. And on the other hand, with anticipation, they pretty much want to go 180 degrees the opposite and import limitations themselves. Both these arguments are unsupported by the intrinsic record and are inconsistent. With respect to a claim construction for infringement, it is clear from the entirety of the intrinsic record, especially the specification here, that the problem to be solved in the prior art is the cracking issue, the cracking on the ends of the time plate at the solder joints of the contact leg. It is clear in the appendix pages 58 and 60 in the columns therein that you have to first address this cracking issue of the solder joints of the contact leg at the ends of the time plate. The prior art solves that using interconnected slots at the end, but this leads to a lot of disadvantages, i.e. decreased yield, decreased strength, and manufacturing issues. So to expressly solve this issue, the necessary feature is to have holes of elongated shape at the ends of the time plate to address this cracking issue of the contact leg at the solder joints. So you must have that. That's basically the stone in the pond and the rest are ripples that they argue for. You have to have that necessary feature of putting at the ends of the time plate these holes of elongated shape. This is consistent with this court's precedent in Tektronix and the lock, where we similarly have this criticism of the prior art, this necessary feature distinguishing the prior art, and you have the full complement of the specification, illustration, embodiments, all illustrating this necessary feature, characterize the invention as this necessary feature, and also supported by the prosecution history here, where again we have expressly overcoming the marked anticipation by disclosing that you have to have these holes at the ends of elongated shape, because you have to have this slight play between the contact leg and these holes of elongated shape to address this issue of thermal expansion. Now turning to anticipation, TST turns to the opposite task of trying to import limitations that are just simply not supported by the intrinsic record here. Namely, grounding leg is their creation. It appears nowhere in the intrinsic record in the specification. It simply just talks about a polarity of contact, each including the leg, inserted through the time plate for contacting the printed circuit board. It makes no distinction about what this contact leg will carry, whether it's signals, whether it's a grounding leg, whether it's a power leg, simply just a contact leg. It's undisputed that that's what the Tyco connector discloses. A contact leg, i.e. a grounding leg in this case, that goes through the time plate connecting to the printed circuit board. This was agreed to by their own expert with infringement. We're at appendix pages 3151 and 3152. We're in a question, so you agree that a contact leg, even under your understanding of the term, can be used in the connection to ground, right? And the answer, a contact leg can be used to make a connection to ground, yes. Here we are clear that there is no distinction here. JSC tried to rely on intrinsic evidence here with Martin, but again, there's no support in its intrinsic record. There is no special definition that they have for a contact leg. I mean, indeed, their own proposed construction for a contact leg is 26 words. I mean, there's simply no support in the record for the 26-word definition for contact leg. A leg must complete an individual electrical circuit by connecting to its counterpart connector and thereby making a connection between a female and male electrical connector. There's simply no support for this 26-word definition. What they talk about with the prosecution history, again, our case law tells us, as we cited, it's three windows. It has to be an argument made by the applicant to affect claim scope. This was an examiner amendment, simply a clarifying amendment that went from a flyer to contact, each including a leg, flyer to contact, each including a contact leg, also in an unasserted claim. So it has no bearing on the proper claim scope here. Accordingly, the commission's final determination, no violation is supported by substantial evidence in accordance with the law, either with non-infringement or anticipation of both. Thank you. Was there any other questions from the court? I don't hear any, so let's hear from Mr. Davies. May it please the court. The International Trade Commission, as you just heard, got this case exactly right. There has to be elongated hold at the end, as John has mentioned, because of the plain language and because of the specs. And our product does not do that. We have equal dimension hold between the elongated hold at the end. And that makes sense. Mr. Davies, Judge Schall here. I have one question, a sort of procedural question. Assume for the moment that we were to agree with you on the issue of infringement. Is it not the case, then, that it would not be necessary for us to reach the validity issue? So, Your Honor, that is correct. The ICC can be affirmed and should be affirmed on both grounds, but only one ground results, as Your Honor mentioned. That would be the end of this dispute. Okay. If you have two reasons, yes. But, Your Honor, I don't want to – I'm here for you. If you don't have questions, I don't want to – So, I'm happy to take a pause just because, in real life, I would be more capable of judging that. It's a little hard in this setting. But I'm happy to be quiet for a little bit. We're not – Counsel, we're not – Counsel, we're not asking questions. Please proceed with whatever you have to say. And if you have nothing further to say, that's fine, too. But don't worry about us. Thank you, Your Honor. So, we've discussed this first issue, and the ICC was right on that. And they were also right on the second issue, that this patent is invalid. When you look at the Tyco Connector, it teaches what this patent teaches. And JST has come up with some arguments, but they do not reflect what this patent teaches. But the ICC just very ably covered our point. We are aligned. We exactly agree with our position. It's not a case where the intervener has daylight between what the government is suggesting. And so, I consider my time – the points I need to make this morning, Your Honor, I consider finished. And so, if there are no further questions, I'm happy to sit down. Thank you, Counsel. Mr. Massey has some rebuttal time. Thank you, Your Honor. The interveners in the government have actually not proposed the same construction here. The interveners in the government have taken different views as to what the proper construction of the elongated holes term is. And the commission has argued that a first hole must be the outermost hole. And the interveners have argued that all the first holes must be closer to the edge than any second hole. I didn't hear anything in their arguments attempting to reconcile their positions. Both lead to absurdities under the government's view. Someone could copy our plate exactly and put a single circular hole at each outermost edge and avoid infringement. Under the interveners' construction, you could put a single elongated hole in the middle and avoid infringement. And both of those positions are absurd. On some of the arguments that have been made, the government has suggested, the commission has suggested that the problem to be solved here is thermal expansion and that that requires that there be an outermost hole at the edge. Nothing in the intrinsic or intrinsic record says that elongated holes must be the outermost holes in order for the invention to work. The commission may know such a finding, and the briefs assert this with no citations. Using your sense of the purpose of a patent is not a proper basis for claim construction. In the Halmedica case, this court said the court's task is not to limit claim language to exclude particular devices because they do not serve a perceived purpose of the invention. On the anticipation argument... The purpose of the invention is the fact, which is no different about greater expansion. That's true, but not all the holes in the end region need to be elongated in order to address thermal expansion. I mean, so long as at least some of the holes in the end region are elongated, they will provide enough play to accommodate different thermal expansion. The elongated holes are most necessary for lakes that are larger in size or shorter in length, and therefore stiffer. Those are the lakes where the effects of thermal expansion are the greatest. So I think the interveners are being inconsistent here. I mean, to say that the only way a time plate can address thermal expansion is by having elongated holes at the outermost edge is inconsistent with the position on infringement, where they say their version of the plate, which also addresses thermal expansion, doesn't infringe because it doesn't have as elongated holes as the outermost holes. On anticipation, we've dealt with their arguments in the brief. Dr. Flowers did not concede that a contact leg is the same as a grounding leg. He specifically testified otherwise, and Chief Justice Bullock agreed with us on that. That's Appendix 3452. The prosecution history of Martin on the contact leg point I think I recited at Appendix 201 and 289, it's quite clear that the examiner's amendment to which the patentee agreed was made to set forth the intended concept. Thank you very much. Unless there are no further questions, I'm finished. Thank you, counsel. The case is submitted.